Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| DAVID DÍAZ CASTRO<br><br>RECURRENTE<br><br>V.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN DE PR<br><br>RECURRIDO | TA2025RA00223 | *Revisión Judicial* procedente del Departamento de Corrección y Rehabilitación de Puerto Rico<br><br>Caso Núm. 215-24-068<br><br><br>Sobre: Revisión, Decisión disciplinaria de querella |
| --- | --- | --- |

Panel integrado por su presidenta, la Juez Lebrón Nieves, el Juez, Pagán Ocasio y la Jueza Álvarez Esnard.

# SENTENCIA

En San Juan, Puerto Rico, a 20 de octubre de 2025.

## I.

El 9 de septiembre de 2025, el señor David Díaz Castro (señor Díaz Castro o recurrente), quien se encuentra privado de la libertad, presentó, por derecho propio y en forma pauperis, un recurso de revisión judicial que tituló *Moción Solicitando Revisión Administrativa.*[1] En este, solicitó que revisemos una *Determinación Enmienda Nunc Pro Tunc* emitida por el Departamento de Corrección y Rehabilitación (DCR) el 13 de agosto de 2025, notificada al recurrente el 18 de agosto de 2025.[2] En virtud de esta, el DCR declaró No Ha Lugar una solicitud de reconsideración[3] suscrita por el señor Díaz Castro el 4 de agosto de 2025, la cual, según reflejan los documentos del expediente, fue presentada el 7 de agosto de 2025, y recibida en la Oficina de Disciplina de Confinados el 12 de

---

[1] Véase Entrada Núm. 1 del recurso en el Sistema Unificado de Manejo y Administración de Casos del Tribunal de Apelaciones (SUMAC-TA). El recurso fue depositado en el correo postal para su envío el 5 de septiembre de 2025. Véase Anejo 1 del recurso en SUMAC-TA.

[2] Véase Entrada Núm. 2 del apéndice del recurso en SUMAC-TA.

[3] Véase Entrada Núm. 3 del apéndice del recurso en SUMAC-TA.

agosto de 2025, y confirmó la sanción que le fuese impuesta mediante una *Resolución*[4] emitida por el DCR el 1 de agosto de 2025.

Junto a su recurso, el señor Díaz Castro incluyó una *Solicitud y declaración para que se exima de pago el arancel por razón de indigencia,* en la que solicitó que le autorizáramos a litigar *in forma pauperis.*[5]

El 16 de septiembre de 2025, notificada al próximo día, emitimos una *Resolución* en la que autorizamos al señor Díaz Castro a litigar en forma *pauperis,* y concedimos a la parte recurrida hasta el 9 de octubre de 2025, para presentar su alegato en oposición.[6]

El 9 de octubre de 2025, el DCR presentó un *Escrito en Cumplimiento de Resolución,* en el que sostuvo que la determinación recurrida debía ser confirmada.[7]

Con el beneficio de la comparecencia de ambas partes, pormenorizamos los hechos atinentes al recurso ante nos.

## II.

El caso de marras tuvo su génesis el 9 de junio de 2025, cuando se presentó una *Querella* contra el recurrente.[8] En esta, el oficial de custodia Ángel Rivera Cruz (Oficial de Custodia) imputó al señor Díaz Castro violaciones a los Códigos 106 y 107 de la Regla 15 del *Reglamento para Establecer el Procedimiento Disciplinario de la Población Correccional,* Reglamento Núm. 9221 de 8 de octubre de 2020, pág. 28 (Reglamento Núm. 9221).[9] Indicó que como parte de

---

[4] Véase Anejo 5 de la Entrada Núm. 3 del apéndice del recurso en SUMAC-TA.
[5] Véase Entrada Núm. 2 del recurso en SUMAC-TA.
[6] Véase Entrada Núm. 4 del recurso en SUMAC-TA.
[7] Véase Entrada Núm. 5 del recurso en SUMAC-TA.
[8] Véase Anejo 1 de la Entrada Núm. 3 del apéndice del recurso en SUMAC-TA.
[9] El Código 106 de la Regla 15 del Reglamento Núm. 9221, *supra,* dispone lo siguiente:

> Contrabando peligroso – Consiste en la posesión de herramientas, artículos, materiales o instrumentos para hacer tatuajes, bebidas embriagantes, dinero, valores, instrumentos negociables, que puedan ser utilizados para la comisión de cualquiera de los actos prohibidos contemplados en este Reglamento. Además, consiste en materiales que no han sido recibidos mediante los canales oficiales y artículos en exceso de los permitidos en el área de vivienda.

> De otra parte, el Código 107 del mismo cuerpo reglamentario lee como sigue:

un registro efectuado ese mismo día en el celda del recurrente, ocupó una fisga casera dentro de un sobre que se encontraba en un cajón plástico donde el señor Díaz Castro guardaba su ropa. El Oficial de Custodia hizo constar que la fisga fue ocupada, fotografiada y guardada en bóveda.

El 23 de junio de 2025, el DCR emitió una *Citación para Vista Administrativa Disciplinaria,* en la que pautó la vista para el 21 de julio de 2025, a las 9:00am.[10] Llegado el día, el recurrente se rehusó a participar de la vista, toda vez que su representante legal no estaba presente y, según indicó, se encontraba gestionando su comparecencia. Ante ello, el Oficial Examinador del DCR, Andrés I. Martínez Colón (Oficial Examinador), transfirió la vista para el 1 de agosto de 2025, no sin antes, apercibir al recurrente de que, si para esa fecha comparecía sin representación legal, la vista se celebraría por derecho propio. Así las cosas, el DCR reseñaló la vista para el 1 de agosto de 2025.[11]

Conforme surge del expediente, el 1 de agosto de 2025, el señor Díaz Castro compareció nuevamente sin representación legal. Tras tomarle juramento, declaró ser inocente. Luego, manifestó que no realizaría ninguna otra alegación ni declaración sin la presencia de su representante legal. Tras ser apercibido de que la vista debía celebrarse, se tornó hostil y agresivo, "diciendo que es inocente de lo que se le imputa, pero no quiso hacer declaraciones en su defensa".[12] Ante su negativa, el Oficial Examinador le informó que

---

Posesión, Fabricación o Introducción de Armas de Fuego, Armas Blancas, Materiales Explosivos, Sustancias Químicas, y Municiones- Se prohíbe la posesión, fabricación, introducción de armas de fuego, armas blancas, materiales explosivos, sustancias químicas, municiones, sustancias de cualquier índole que puedan ser utilizadas para la confección de armas, materiales explosivos, sustancias químicas, o todo tipo de municiones. Se incluyen pistolas, revolver, navajas, fisgas, clavos, tornillos, cualquier otro que pueda causar algún tipo de daño corporal.

[10] Véase Anejo 3 de la Entrada Núm. 3 del apéndice del recurso en SUMAC-TA.
[11] Véase Anejo 4 de la Entrada Núm. 3 del apéndice del recurso en SUMAC-TA
[12] Véase Anejo 5 de la Entrada Núm. 3 del apéndice del recurso en SUMAC-TA, pág. 26.

la determinación se tomaría a base de la evidencia que obraba en el expediente.

Así las cosas, el DCR emitió una *Resolución* en la que determinó que la evidencia presentada resultaba preponderante para conectar al recurrente con los actos imputados.[13] Consecuentemente, lo declaró incurso por violación a los Códigos 106 y 107 de la Regla 15 del Reglamento Núm. 9221, *supra,* e impuso la siguiente sanción: "[s]uspensión del privilegio de comisaría (excepto artículos de higiene personal), recreación activa, visita, actividades especiales y cualquier otro privilegio que se le conceda en la institución por el periodo de sesenta (60) días calendarios."[14]

Resulta meritorio señalar que, como parte de la *Resolución,* el Oficial Examinador realizó una marca en el inciso (a) del encasillado nueve (9) de esta, el cual dispone lo siguiente: "El confinado admitió la violación de la norma."[15]

Inconforme, el 4 de agosto de 2025, el señor Díaz Castro firmó una *Solicitud de Reconsideración de Decisión de Informe Disciplinario para Confinado,* la cual, según reflejan los documentos del expediente, fue presentada el 7 de agosto de 2025, y recibida en la Oficina de Disciplina de Confinados el 12 de agosto de 2025.[16] En primer orden, alegó que la vista se celebró sin la presencia de su representación legal. De otra parte, sostuvo que, contrario a lo indicado en la *Resolución* recurrida, nunca admitió culpabilidad por el acto imputado. Además, argumentó que la violación al Código 106

---

[13] Véase Anejo 5 de la Entrada Núm. 3 del apéndice del recurso en SUMAC-TA. Según la *Resolución*, el Oficial Examinador tomó en consideración la siguiente evidencia: Informe de querella de incidente disciplinario; Informe de investigación; declaración del querellante; declaración del querellado; foto; Informe de Registros e Incautaciones de Contrabando [en] Instituciones Correccionales y Juveniles por el sargento Alberto Santiago Ortiz; libro de novedades de la vivienda 2, folio 52 y, la totalidad del expediente administrativo.

[14] Véase Anejo 5 de la entrada Núm. 3 del apéndice del recurso en SUMAC-TA, pág. 25.

[15] Íd.

[16] Véase Anejo 6 de la Entrada Núm. 3 del apéndice del recurso en SUMAC-TA.

de la Regla 15 del Reglamento Núm. 9221, *supra,* no fue probada. Detalló que la declaración del Oficial de Custodia únicamente hacía referencia al Código 107 de la referida regla.

Por último, señaló que de conformidad al Código 107 de la Regla 15 del Reglamento Núm. 9221, *supra,* para que una fisga fuese considerada como arma blanca, esta debía medir "como 3 pulgadas y [tener] filo".[17] Añadió que no se le ocupó nada y menos aún en su presencia.

El 13 de agosto de 2025, el DCR acogió la solicitud y emitió una *Determinación Enmienda Nunc Pro Tunc.*[18] En primer lugar, dispuso que el señor Díaz Castro no había admitido la violación de la norma, por lo que correspondía modificar el encasillado número 9 de la *Resolución* para hacerlo constar. En segundo lugar, razonó que la prueba presentada no lograba configurar los elementos del acto prohibido bajo el Código 106 de la Regla 15 del Reglamento Núm. 9221, *supra.* No obstante, sostuvo que sí se había probado la violación al Código 107 del mismo cuerpo reglamentario. Precisó que el señor Díaz Castro no presentó evidencia nueva o distinta que le permitiera concluir que este no poseía la fisga entre sus pertenencias.

En tercer lugar, sostuvo que el Código 107 de la Regla 15 del Reglamento Núm. 9221, *supra,* no establecía medidas o longitudes específicas para que un objeto cumpliera con el elemento de ilegalidad o peligrosidad. Sostuvo que la fisga encontrada en las pertenencias del recurrente constituía un objeto alargado de metal que podía ser utilizado para causar daño corporal.

En cuarto lugar, explicó que, de conformidad al *Reglamento sobre Registros de Celdas* de 30 de diciembre de 2004, la presencia

---

[17] Íd., pág. 29.
[18] La determinación fue recibida por el señor Díaz Castro el 18 de agosto de 2025. Véase Entrada Núm. 2 del apéndice del recurso en SUMAC-TA.

del confinado al momento de realizar un registro no era necesaria. Detalló que la jurisprudencia federal ha reconocido que los registros imprevistos no violentan el debido proceso de ley, y que la ausencia de los confinados durante su ejecución permite que las inspección sean más seguras y efectivas.

Por último, señaló que el *Reglamento de Registros* del DCR, aprobado también el 30 de diciembre de 2004, disponía que, si el contrabando podía asociarse con algún miembro de la población correccional, se aplicarían las disposiciones del procedimiento disciplinario que correspondieran. En ese sentido, razonó que "al querellado tener control y dominio de sus pertenencias y todo lo que se encuentre en sus pertenencias, se puede asociar el objeto de contrabando (fisga) con el querellado."[19]

En vista de todo lo anterior, el DCR declaró No Ha Lugar la solicitud de reconsideración y confirmó la sanción impuesta.

Aún inconforme, el 9 de septiembre de 2025, el recurrente instó el recurso de revisión judicial que nos ocupa.[20] En esencia, arguye que la *Querella* fue fabricada, pues la fisga en cuestión no fue ocupada en su presencia, y nunca le mostraron una foto de esta. Además, cuestiona la imparcialidad del DCR, toda vez que el Oficial Examinador que emitió la *Resolución* también fue quien atendió su solicitud de reconsideración.

El 9 de octubre de 2025, el DCR, por conducto de la Oficina del Procurador General, sometió un *Escrito en Cumplimiento de Resolución*.[21] En este, sostiene que no existe una directriz específicas que exija la presencia de una persona privada de libertad durante el registro de una celda. Añade que la reglamentación aplicable no prohíbe que el mismo oficial examinador que resolvió

---

[19] Véase Entrada Núm. 2 del apéndice del recurso en SUMAC-TA, pág. 33.
[20] Véase Entrada Núm. 1 del recurso en SUMAC-TA.
[21] Véase Entrada Núm. 5 del recurso en SUMAC-TA.

una querella atienda la moción de reconsideración. En consecuencia, sostiene que la determinación recurrida no es ilegal, arbitraria ni irrazonable, por lo que debe ser confirmada.

En adelante, pormenorizamos el derecho aplicable a la controversia presentada ante nos.

**III.**

**A.**

La *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, Ley Núm. 38 de 2017, según enmendada, 3 LPRA secs. 9601 *et seq.*, (LPAU) establece el alcance de la revisión judicial de las determinaciones de las agencias administrativas. A tenor de esta y la jurisprudencia aplicable, la revisión judicial consiste, esencialmente, en determinar si la actuación de la agencia se dio dentro de las facultades que le fueron conferidas por ley, si es compatible con la política pública que la origina y si es legal y razonable. ***Capó Cruz v. Jta. de Planificación et al.***, 204 DPR 581, 590-591 (2020); ***Rolón Martínez v. Supte. Policía***, 201 DPR 26, 35 (2018). Es decir, que este tipo de revisión busca limitar la discreción de las agencias y garantizar que estas desempeñen sus funciones de acuerdo con los confines de la ley. ***García Reyes v. Cruz Auto Corp.***, 173 DPR 870, 891-892 (2008). De la mano con esto, es norma reiterada de derecho que los foros revisores le concederán gran deferencia y consideración a las decisiones de las agencias administrativas, debido a la vasta experiencia y el conocimiento especializado sobre los asuntos que le fueron delegados. ***Graciani Rodríguez v. Garage Isla Verde***, 202 DPR 117, 126 (2019); ***Rolón Martínez v. Supte. Policía***, supra. Conforme a ello, los tribunales deben ser cautelosos al intervenir con las decisiones de los organismos administrativos. ***Metropolitana, S.E. v. A.R.Pe.***, 138 DPR 200, 213 (1995); ***Viajes Gallardo v. Clavell***, 131 DPR 275, 289–290 (1992).

Por las razones antes aludidas, las decisiones de las agencias administrativas gozan de una presunción de regularidad y corrección. *Capó Cruz v. Jta. de Planificación et al.*, supra; *Rolón Martínez v. Supte. Policía*, supra; *García Reyes v. Cruz Auto Corp.*, supra, pág. 892. La presunción de corrección que acarrea una decisión administrativa deberá sostenerse por los tribunales a menos que la misma logre ser derrotada mediante la identificación de evidencia en contrario que obre en el expediente administrativo. *Misión Ind. P.R. v. J.P.*, 146 DPR 64, 130 (1998).

Así, al momento de revisar una decisión administrativa, el criterio rector para los tribunales será la razonabilidad en la actuación de la agencia. *Rebollo v. Yiyi Motors,* 161 DPR 69, 76 (2004). Cónsono con ello, será necesario determinar si la agencia actuó de forma arbitraria, ilegal o de manera tan irrazonable que su actuación constituyó un abuso de discreción. *Rolón Martínez v. Supte Policía,* supra.

Según ha quedado establecido, como norma general, el ejercicio de revisión judicial de una decisión administrativa se limita a tres asuntos: (1) la concesión del remedio apropiado; (2) la revisión de las determinaciones de hecho conforme al criterio de evidencia sustancial que obra en el expediente administrativo; y (3) la revisión completa y absoluta de las conclusiones de derecho. *Asoc. Fcias. v. Caribe Specialty et al. II*, 179 DPR 923, 940 (2010).

De esta forma, en el contexto de las determinaciones de hechos realizadas por las agencias administrativas, nuestro más alto foro ha pautado que los tribunales no deben intervenir o alterar las determinaciones de hechos de un organismo administrativo "si las mismas están sostenidas por evidencia sustancial que surja del expediente administrativo considerado en su totalidad". *Otero v. Toyota,* 163 DPR 716, 727-728 (2005); *Domínguez v. Caguas Expressway Motors, Inc.*, 148 DPR 387, 397 (1999). Dentro de este

marco, evidencia sustancial se entiende como "aquella evidencia pertinente que una mente razonable pueda aceptar como adecuada para sostener una conclusión". *Ramírez v. Depto. de Salud*, 147 DPR 901, 905 (1999). Por ello, la parte que alegue ausencia de evidencia sustancial debe demostrar que existe:

> "[O]tra prueba en el récord que razonablemente reduzca o menoscabe el peso de tal evidencia, hasta el punto de que un tribunal no pueda, concienzudamente, concluir que la evidencia sea sustancial [...] y hasta el punto que se demuestre claramente que la decisión [del organismo administrativo] no está justificada por una evaluación justa del peso de la prueba" que tuvo ante su consideración. *Metropolitana S.E. v. A.R.Pe.*, supra, pág. 213, citando a *Hilton Hotels v. Junta Salario Mínimo*, 74 DPR 670, 686 (1953).

En otras palabras, la parte recurrente tiene la obligación de derrotar la presunción de corrección de los procesos y de las decisiones administrativas. *Fac. C. Soc. Aplicadas, Inc. v. C.E.S.*, 133 DPR 521, 532 (1993). Si no demuestra que existe esa otra prueba, las determinaciones de hechos del organismo administrativo deben ser sostenidas por el tribunal revisor. *Ramírez v. Depto. de Salud*, supra.

Ahora bien, cuando se trate de <u>conclusiones de derecho</u> que no envuelvan interpretaciones dentro del área de especialización de la agencia, éstas se revisarán por los tribunales sin circunscribirse al razonamiento que haya hecho la agencia. *Capó Cruz v. Jta. de Planificación et al.*, supra; *Pacheco v. Estancias*, 160 DPR 409, 432 (2003); *Rivera v. A & C Development Corp.*, 144 DPR 450, 461 (1997). Cuando las determinaciones de las agencias estén entremezcladas con conclusiones de derecho, el tribunal tendrá amplia facultad para revisarlas, como si fuesen una cuestión de derecho propiamente. *Pacheco v. Estancias*, supra, pág. 433; *Rivera v. A & C Development Corp.*, *supra.* En nuestro ordenamiento jurídico, es norma reiterada que, en el proceso de revisión judicial, los tribunales tienen la facultad de revocar al foro

administrativo en materias jurídicas. Véase, además, la Sec. 4.5 de la LPAU, *supra*, sec. 9675.

Es pertinente señalar que nuestro sistema de adjudicación administrativo busca "alentar la solución informal de las controversias", según establece la Sec. 1.2 de la LPAU, *supra*, sec. 9602. Para ello, la LPAU permite que las agencias establezcan las reglas y procedimientos que regirán ante sí para la solución rápida e informal de las controversias; siempre salvaguardando los derechos garantizados por ley. Íd. Por lo cual, las agencias no quedan sometidas a un procedimiento rígido que obstaculice la producción de una solución rápida, justa y económica. Íd.

En suma, la referida deferencia debe ceder cuando se demuestre que: (1) la decisión no está basada en evidencia sustancial; (2) la agencia ha errado en la aplicación de la ley; (3) la actuación de la agencia resulta ser arbitraria, irrazonable o ilegal; y (4) la actuación administrativa lesiona derechos constitucionales fundamentales. ***The Sembler Co. v. Mun. de Carolina***, 185 DPR 800, 822 (2012), citando a ***Empresas Ferrer v. A.R.PE.***, 172 DPR 254, 264 (2007).

**B.**

El 21 de noviembre de 2011 se aprobó el *Plan de Reorganización del Departamento de Corrección y Rehabilitación de 2011*, 3 LPRA Ap. XVIII, Art. 1 *et seq.* (Plan Núm. 2-2011), con el fin de promover "una estructura gubernamental que responda a las necesidades reales y contribuya a una mejor calidad de vida para nuestros ciudadanos". El Reglamento Núm. 9221, *supra*, fue adoptado por virtud del Plan Núm. 2-2011 y de la LPAU. Este Reglamento "constituye la estructura disciplinaria para los miembros de la población correccional cumpliendo con la política pública de modificación de conducta desde la perspectiva de rehabilitación, y evitando un carácter punitivo". Introducción del

Reglamento Núm. 9221, *supra,* pág. 1. A través de este, se establece un mecanismo para imponer medidas disciplinarias a las personas privadas de libertad que violen las normas y procedimientos establecidos en las instituciones bajo la jurisdicción del DCR. Íd.

En lo pertinente al asunto ante nuestra consideración, el Reglamento Núm. 9221, *supra,* pág. 6, define acto prohibido como cualquier conducta que implique una violación a las normas de conducta de la institución, que conlleve la imposición de medidas disciplinarias, y que incluye cualquier acto u omisión, o conducta tipificada como delito. A su vez, el Código 107 de la Regla 15 del referido reglamento, *supra,* pág. 28, establece como acto prohibido de nivel I el siguiente:

> Posesión, Fabricación o Introducción de Armas de Fuego, Armas Blancas, Materiales Explosivos, Sustancias Químicas, y Municiones- Se prohíbe la posesión, fabricación, introducción de armas de fuego, armas blancas, materiales explosivos, sustancias químicas, municiones, sustancias de cualquier índole que puedan ser utilizadas para la confección de armas, materiales explosivos, sustancias químicas, o todo tipo de municiones. Se incluyen pistolas, revolver, navajas, fisgas, clavos, tornillos, cualquier otro que pueda causar algún tipo de daño corporal.

En instancias en las que se presente una querella por alegada violación a las normas del Reglamento Núm. 9221, *supra,* un oficial de querella deberá llevar a cabo la investigación correspondiente. Regla 12 del Reglamento Núm. 9221, *supra,* pág. 23. Cuando se impute la comisión de un acto prohibido, el oficial de querella referirá el caso al oficial examinador quien celebrará una vista administrativa, adjudicará la querella e impondrá las sanciones que, a su discreción, entienda correspondiente. Regla 13 y 28 del Reglamento Núm. 9221, *supra,* págs. 25 y 74. La determinación que emita el oficial examinador deberá estar basada en la totalidad de la evidencia presentada, la cual deberá evaluarse bajo el estándar de preponderancia de la prueba. Regla 28 del Reglamento Núm. 9221, *supra.*

## c.

Al amparo de las facultades que le fueron conferidas, el 30 de diciembre de 2004, el DCR adoptó dos reglamentos internos: el *Reglamento de Registros* y el *Reglamento sobre Registro de Celdas*.[22] En virtud del primero, el DCR procura preservar la seguridad y el orden institucional mediante registros frecuentes a la población correccional, con el fin de detectar el contrabando, recuperar propiedad hurtada o desaparecida, prevenir fugas, entre otros. Art. II del Reglamento de Registros, *supra*, pág. 1. Los registros consisten en una "[i]nspección visual o búsqueda de contrabando, propiedad hurtada o desaparecida, y situaciones de riesgo para la seguridad institucional mediante el uso de registro físico, de dispositivos o medios electrónicos, unidad canina, rayos x, o tecnología similar." Art. V (6) del Reglamento de Registros, *supra*, pág. 4. Se llevan a cabo de manera irregular y sin previo aviso, y son realizados tanto a personas como a áreas de vivienda, vehículos y otros lugares de la institución. Íd.; Art. VI (3) del Reglamento de Registros, *supra*, pág. 15.

Resulta meritorio señalar que el Reglamento de Registros define contrabando como la "transportación, posesión, el traspaso, introducción o fabricación de artículos o propiedad dentro de la institución que no ha sido autorizada al miembro de la población correccional...". Art. V (4) del Reglamento de Registros, *supra*, pág. 3. Cuando un artículo o propiedad que sea considerado como tal sea

---

[22] Ambos reglamentos fueron promulgados por el Secretario de la extinta Administración de Corrección, en virtud de la Ley Núm. 116 de 22 de julio de 1974, 4 LPRA sec. 1101 *et seq.*, la cual fue derogada y reemplazada por el Plan Núm. 2-2011. No obstante, advertimos que el referido Plan dispuso que todos los reglamentos que rigieran la operación de las funciones y programas del DCR, y que estuviesen vigentes a la fecha de su efectividad, continuarían en vigor hasta que fuesen sustituidos, enmendados o derogados. Véase 3 LPRA Ap. XVIII, Art. 68. Así, se entenderá que cualquier alusión a la Administración de Corrección en cualquier reglamento hace referencia al DCR. Precisamos que los reglamentos mencionados no han sido sustituidos ni derogados, por lo que continúan vigentes.

hallado durante un registro, se confiscará y entregará al supervisor de turno. Art. VII (1) del Reglamento de Registros, *supra*, pág. 18. Simultáneamente, se realizará un informe de lo incautado, incluyendo un inventario, su identificación y se clasificará para determinar el proceso para su disposición. Íd. Si el artículo o la propiedad incautada se encontraba en posesión de, o puede ser asociada a un miembro de la población correccional, se aplicarán las disposiciones del procedimiento disciplinario que apliquen. Art. VII (2) del Reglamento de Registros, *supra*, pág. 19.

Por otro lado, el Reglamento sobre Registro de Celdas, *supra*, fue promulgado a los fines de establecer los procedimientos mínimos que deben regir al momento de llevar a cabo un registro de celdas. Estos registros buscan mantener las instituciones libres de contrabando, armas y artículos en exceso de lo permitido. A su vez, procuran mantener las celdas operacionales, garantizando un ambiente seguro para el personal y los miembros de la población correccional. Art. II del Reglamento sobre Registro de Celdas, *supra*, pág. 1.

Los registros a las celdas se realizan al azar y de manera aleatoria, a discreción del supervisor de turno. Art. V (4) del Reglamento sobre Registros de Celdas, *supra*, pág. 2. Entre los materiales ilegales que pueden ser ocupados mediante un registro a una celda, se encuentran las fisgas. Anejo D del Reglamento sobre Registro de Celdas, *supra*.

**IV.**

En el caso ante nuestra consideración, el recurrente imputó al DCR haber errado al declararlo incurso en el proceso disciplinario por violación al Código 107 de la Regla 15 del Reglamento Núm. 9221, *supra*, a pesar de que no estuvo presente mientras se llevó a cabo el registro en su celda en el que se ocupó una fisga casera. Además, impugna la imparcialidad del DCR, al sostener que el

mismo Oficial Examinador que resolvió la *Querella* fue quien atendió su solicitud de reconsideración.

Por su parte, el DCR sostiene que nada en el ordenamiento jurídico vigente exige que un miembro de la población correccional esté presente durante un registro a su celda, ni que se le entregue una foto de lo ocupado. Añade que el Reglamento Núm. 9221, *supra*, no prohíbe que el mismo oficial examinador que atendió una querella y emitió una determinación, resuelva una moción de reconsideración posterior.

Tras un análisis objetivo, sereno y cuidadoso del expediente en su totalidad, resolvemos que el DCR actuó razonablemente y emitió el dictamen recurrido conforme a la reglamentación vigente.

Nada en las disposiciones reglamentarias pormenorizadas exige la presencia de una persona privada de libertad mientras se lleva a cabo un registro en el área de vivienda, incluida la celda. Estas tampoco establecen que la ausencia de un miembro de la población correccional durante dicha intervención afecte la validez del procedimiento ni de las determinaciones que resulten de ella. De igual forma, nada disponen sobre la entrega de fotos a la persona privada de libertad sobre el artículo ocupado durante un registro.

En lo que respecta al trámite de la reconsideración, tampoco surge del derecho reseñado que un oficial examinador esté impedido de atender una solicitud de reconsideración sobre una determinación previamente emitida. En ese sentido, el proceso de reconsideración en el presente caso se llevó a cabo dentro del marco legal vigente. Además, cabe señalar que, como parte de la *Resolución Enmienda Nunc Pro Tunc*, el Oficial Examinador acogió dos de los argumentos presentados por el señor Díaz Castro en su moción de reconsideración. Específicamente, el Oficial Examinador (1) enmendó el encasillado número 9 de la *Resolución* para reflejar que el recurrente no había admitido la violación de la norma imputada

y, (2) concluyó que no hubo violación al Código 106 de la Regla 15 del Reglamento Núm. 9221, *supra*. Razonamos que ello derrota el planteamiento de imparcialidad que presenta el señor Díaz Castro.

Según dispone nuestro ordenamiento jurídico, este foro revisor solo intervendrá en la determinación de una agencia cuando esta haya actuado de forma arbitraria, ilegal o irrazonable y cuando medie evidencia sustancial que apoye dicha actuación. ***The Sembler Co. v. Mun. de Carolina***, supra, citando a ***Empresas Ferrer v. A.R.PE.***, supra.

En ausencia de evidencia que razonablemente reduzca o menoscabe la presunción de regularidad y corrección que reviste la determinación recurrida, esta merece nuestra deferencia.

**V.**

Por los fundamentos pormenorizados, se confirma la determinación recurrida.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones